IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LEON-MICHAEL :THOLSON,<br><br>        Plaintiff,<br>  v.<br><br>DEBBIE MILLER, et al.,<br><br>        Defendants. | <br><br><br><br><br><br>Case No. 3:13-cv-00043-SLG |

## ORDER RE PENDING MOTIONS AND SCHEDULING ORDER

Plaintiff Leon-Michael :Tholson was a pretrial detainee at all relevant times in this case, who was held at the Anchorage Correctional Center ("ACC"). He has raised a number of claims against Defendants, who are various employees of the Department of Corrections.[1] Several motions are pending before the Court in this case, each of which this order is intended to address. The primary motion is Defendants' Motion for Summary Judgment filed at Docket 336. Plaintiff filed a response to the motion at Docket 370, which addressed the excessive force claim, to which Defendants replied at Docket 377. Plaintiff filed a supplemental response at Docket 381 addressing the other outstanding claims, to which Defendants filed a reply at Docket 382. Plaintiff filed a Request to Re-Brief Motion for Summary Judgment at Docket 385, which Defendants opposed at Docket 387. In addition, Plaintiff filed a "Notice of Errata" at Docket 391, and appended a declaration in which he sought to amend certain deposition testimony he had provided in this case, which Defendants moved to strike at Docket 392. This order also addresses three other motions filed by Plaintiff at Dockets 371, 380, and 390.

---

[1] Docket 31 (Third Amended Complaint).

Plaintiff alleges civil rights violations including an excessive use of force claim against Lieutenant Hugh Hubbard related to Mr. Tholson's escort to the segregation unit on or about June 30, 2012 (Claim 1). He also raised a due process claim asserting that Superintendent Debbie Miller and Kitchen Manager Mickey Young knowingly provided inadequate food services on or about August 1, 2012 (Claim 2). He raised a due process claim against Officer Dian Thomas for being left in restraints during a visit with his son on or about October 9, 2012 (Claim 3). Plaintiff raised claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) asserting that on or about January 7 and/or 8, 2013, Facility Standards Officer Suluia Augafa, Superintendent Miller, and Officer Dian Thomas violated his religious rights by hampering his efforts to expand the "spiritual materials" of the facility (Claims 4 and 5). Plaintiff raised another RLUIPA claim against Superintendent Miller for preventing him from taking an extra blanket and spiritual book to the recreation yard on or about June 7, 2013 (Claim 6). Plaintiff raised a failure-to-protect claim against Lieutenant Sondra Thomas alleging that her actions on or about June 12, 2013 subjected him to "threats and beatings" from June 12 through June 20, 2013 (Claim 7, mislabeled as Claim 6). Plaintiff raised a due process and equal protection claim asserting that on or about July 3, 2013 Sergeant Thomas Elmore denied Plaintiff an opportunity to call the Alaska State Troopers to report the assaults alleged in Claim 7 (Claim 8). Finally, Plaintiff included Rebecca Cowart-Wilkerson as a named defendant in the caption of the Third Amended Complaint ("TAC"), but failed to mention her in the body of the TAC. Mr. Tholson seeks damages in the amount of $100,000 from each defendant, together with punitive damages in the amount of $5,000 from each defendant. He also

seeks an order that would require modification of the ACC food carts to keep food at the appropriate temperature and compliance with the RLUIPA.[2]

On October 30, 2013, the Court dismissed Claims 3 and 4, Defendants Rebecca Cowart-Wilkerson and Dian Thomas, and Superintendent Miller as to Claim 5.[3] Defendants now seek summary judgment on each the remaining claims.

I.     **Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case is a civil action arising under federal law.

II.    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[4] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[5] The non-moving party may not rely on mere allegations or denials.[6] He must demonstrate that enough evidence supports the alleged

---

[2] *See* Docket 31 (Third Amended Complaint) at 6–13.

[3] Docket 33 (Order). *See* 28 U.S.C. §1915(e)(2)(B); 28 U.S.C. §1915A(b); 42 U.S.C. §1997e(c)(1) (screening prisoner civil rights actions).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[6] *Id.*

factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[7]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[8] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[9] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[10] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[11]

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[12]

---

[7] *Id.* (citing *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[8] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[9] *Id.* at 248.

[10] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)).

[11] *Anderson*, 477 U.S. at 249.

[12] Fed. R. Civ. P. 56(c)(1).

**III. Discussion**

Mr. Tholson's claims arise under 42 U.S.C. § 1983. The validity of claims raised under § 1983 are not governed by a single generic standard. Rather, the Court must judge each claim by reference to the specific constitutional standard which governs the right implicated by the claim.[13]

**A. Claim 1, Excessive Use of Force**

Mr. Tholson alleges in Claim 1 that during his escort to the segregation unit on July 30, 2012, Lieutenant Hubbard used excessive force by slamming him to the ground and knee striking him without cause.[14] The particular right infringed by an application of excessive force depends in part on the status of the claimant. For example, claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment.[15] And it is well established that the Eighth Amendment governs the excessive use of force claims of convicted prisoners serving their sentences, as such claims relate to the severity of otherwise-permissible punishment.[16] But Mr. Tholson is a pretrial detainee. His grievance did not arise in the context of an arrest. Rather, as a

---

[13] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

[14] Docket 31 at 6.

[15] *Graham*, 490 U.S. at 396.

[16] See *Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitely v. Albers*, 475 U.S. 312 (1986).

pretrial detainee he has a Fourteenth Amendment Due Process right to be free from conditions and restrictions that amount to punishment.[17]

To prevail on an excessive force claim, a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.[18] The analysis turns on the facts and circumstances of each case: from the perspective of a reasonable officer on the scene; accounting for the government's legitimate interest in managing the facility; and appropriately deferring to the policies and practices needed to preserve internal order.[19] Considerations that may bear on the reasonableness or unreasonableness of the force used include the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the officer to temper or limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting.[20]

In their briefing on the summary judgment motion, both parties refer extensively to a surveillance video of Mr. Tholson's escort to segregation. However, the Court is unable to locate a copy of the videotape in the record. Defendants maintain that the video shows no use of excessive force. But Plaintiff maintains in his declaration that the video shows Lieutenant Hubbard slamming Mr. Tholson from behind, who falls into a fetal position,

---

[17] *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

[18] *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

[19] *Id.* (quoting *Graham*, 490 U.S. at 396).

[20] *Id.*

and then Lieutenant Hubbard used "four maybe five knee strikes" on Mr. Tholson.[21] Viewing the evidence in the record in the light most favorable to Mr. Tholson, the Court finds that there is a material factual dispute as to whether Sergeant Hubbard used an amount of force against Mr. Tholson that was objectively unreasonable in violation of the Fourteenth Amendment's Due Process Clause.[22] Also, qualified immunity would not necessarily apply if, as Plaintiff alleges, Sergeant Hubbard continued to use force against Mr. Tholson after he was lying on the floor in a fetal position.[23] For the foregoing reasons, summary judgment on Claim 1 will be denied.

B.  **Claim 2, Inadequate Food Service**

Mr. Tholson also asserts that Superintendent Miller and Kitchen Manager Young violated his due process rights on or about August 1, 2012 by failing to take action on his complaints that ACC food is cross-contaminated and not served at proper temperatures.[24] Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, courts often apply the same standards to

---

[21] Docket 370-1 at 1-2. *See also* Docket 351-1 at 10 (Tholson Deposition). In addition to the fact that the surveillance video footage was not provided to the Court, the court record also does not appear to include the CD of the Trooper interviews or the Incident Report that were evidently generated from this incident. Rather, all that appears to be included is a conclusory Declaration of Trooper Scott Bartlett at Docket 344, indicating that "[a]fter a careful and thorough investigation, I did not locate any evidence to corroborate Mr. Tholson's claims of assault by Sergeant Hubbard." Docket 344 at 2. *See also Spratt v. Rhode Island Dept. of Corrections*, 482 F.3d 33, 43 (1st Cir. 2007) (denial of summary judgment appropriate where factual records "contain gaps" and "depend on evidence not in the record but readily obtainable.").

[22] *See Kingsley*, 135 S. Ct. at 2473.

[23] *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right").

[24] Docket 31 at 7.

this type of claim.[25] "The Eighth [and Fourteenth] Amendment[s] require[ ] only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing," and food that occasionally contains foreign objects or sometimes is served cold does not amount to a constitutional deprivation.[26]

In the briefing on this claim, Plaintiff's primary focus appears to be the frequency with which the juice pitchers are washed. Mr. Tholson indicates that these pitchers "were only washed two times that I know of" and "were [also] used to clean the unit."[27] But he does not assert that he has any evidence that he has become ill from the juice pitchers used in the segregation unit. Rather, Mr. Tholson fails to present any evidence of any food or juice-borne illness. Based on this record, even if the juice pitchers were washed only infrequently, Plaintiff cannot establish that this practice is inadequate to maintain his health, so it would not violate his constitutional rights. Rather, the record demonstrates that ACC officials have tried to address prison food issues of which they were aware. On this claim, Defendants are entitled to summary judgment.

### C. Claim 5, Religious Materials

Claim 5 alleges a violation of Mr. Tholson's rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[28] At his deposition, Mr. Tholson indicated

---

[25] *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *see also Graves v. Arpaio*, 623 F.3d 1043, 1050 (9th Cir. 2010) (applying Eighth Amendment standard to pretrial detainee's claim of inadequate food).

[26] *LeMarie v. Maas*, 13 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted).

[27] Docket 381-1.

[28] 42 U.S.C. § 2000cc et seq.

he was abandoning this claim, and he did not brief it in his opposition to this motion. Defendants are therefore entitled to summary judgment on Claim 5.[29]

### D. Claim 6, RLUIPA Violation

Mr. Tholson asserts that Superintendent Miller violated his religious rights under RLUIPA by maintaining a policy under which he was prohibited from bringing a blanket and book to the recreation yard on June 7, 2013. RLUIPA provides in relevant part that "'[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the burden furthers 'a compelling governmental interest,' and does so by 'the least restrictive means.'"[30] "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."[31] But the Supreme Court recognized in *Cutter v. Wilkinson* that Congress enacted RLUIPA anticipating that "courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."[32] Under Ninth Circuit precedent, to constitute a substantial burden, a limitation on religious practice

---

[29] *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (plaintiff abandons claims by not raising them in opposition to a motion for summary judgment).

[30] *Cutter v. Wilkinson*, 544 U.S. 709, 712 (2005) (quoting 42 U.S.C. § 2000cc-1(a)(1)–(2)).

[31] 42 U.S.C. § 2000cc-5(7)(A).

[32] 544 U.S. at 723.

"must impose a significantly great restriction or onus upon such exercise" or put "substantial pressure on an adherent to modify [ ] behavior or to violate [ ] beliefs."[33]

On Claim 6, Mr. Tholson clarified that the blanket and book are related to his religious yoga practice.[34] Mr. Tholson acknowledges in his opposition that the prison rule "has not completely stopped me from exercising my religious belief."[35] But he maintains that it does substantially burden his practice, as he asserts that he can only do one set of yoga poses within the confines of his cell. However, Superintendent Miller explained that "[i]t is not uncommon for prisoners to use books or blankets to carry contraband . . . . Allowing inmates in the segregation unit—who have already shown that they will break prison rules—to carry books and blankets—and thus have the ability to hide contraband and potentially dangerous objects—would undermine the security and safety of the ACC."[36] Plaintiff has not demonstrated that the prohibition on the blanket and book places the requisite "substantial burden" on his religious practice relative to the security concerns of ACC administrators. And, in any event, the law governing the right of inmates in segregation to have personal property in a recreational yard has not been clearly established, and was not clearly established as of June 7, 2013, so Superintendent Miller is entitled to qualified immunity on this Claim.[37]

---

[33] *Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir. 2015).

[34] Docket 381 at 4–5.

[35] Docket 381 at 4.

[36] Docket 340 at 4.

[37] *See City and Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (an officer cannot be said to have violated a clearly established right unless the right's contours

### E. Claim 7, Failure to Protect

In Claim 7, Mr. Tholson asserts that Lieutenant Thomas violated his Fourteenth Amendment right to be free from violence at the hands of other inmates in June 2013 when she (1) made the decision to move him to the Fox module, and (2) "gave the green light" to other inmates in that module to assault him." The precise standard applicable to such failure-to-protect claims raised by pretrial detainees is somewhat unsettled, but nevertheless turns in part on a showing that prison officials acted with deliberate indifference to a particular risk.[38] Mr. Tholson does not presently dispute that it was not Lieutenant Thomas who made the decision to move him to the Fox (F) module. But he does assert that when he arrived at the (F) module, "Sondra Thomas was on the unit and pointed me out to a number of prison gang members telling them I was charged with sex crimes and I should pay tax or be assaulted."[39] Likewise, at his deposition Mr. Tholson testified that when he arrived at the (F) module, Lieutenant Thomas was "laughing,

---

were sufficiently definite that any reasonable official would have understood it, and existing precedent places the statutory or constitutional question beyond debate).

[38] *See Castro v. Cty. of Los Angeles*, 797 F.3d 654, 664 (9th Cir. 2015) (pretrial detainee's right to be free from violence at the hands of other inmates arises from the Fourteenth Amendment rather than the Eighth Amendment, but turns on the same "deliberate indifference" test), *reh'g en banc granted* Dec. 28, 2015; *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (failure-to-protect claim must show incarceration under conditions posing a substantial risk of serious harm and prison official's deliberate indifference); *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) (applying the *Farmer* test to a pretrial detainee's failure to prevent harm claim); *but see Castro*, 797 F.3d at 679–682 (Graber, J., dissenting) (premise of *Clouthier* that Eighth and Fourteenth Amendment standards are identical for failure-to-protect claims is "questionable" after *Kingsley*, 135 S. Ct. 2466 (2015), found qualitative differences between Eighth and Fourteenth Amendment excessive force claims; but deliberate indifference remains a touchstone).

[39] Docket 381-1 at 2.

carrying on, discussing things that they shouldn't have been discussing [with the prisoners on the mod], namely my criminal charges and what they should do about it."[40] Mr. Tholson has alleged that, as a result, from June 12, 2013 through June 20, 2013 he was "subject to numerous threats and beatings."[41] Accordingly, Mr. Tholson has raised a genuine dispute of material fact as to whether Lieutenant Thomas acted deliberately indifferent to the risk Mr. Tholson faced.

Defendants respond that Mr. Tholson has not made the requisite showing of physical injury as required by 42 U.S.C. § 1997e(e).[42] But "[t]o the extent that [a litigant's] claims for compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred."[43] Mr. Tholson's failure-to-protect claim made some showing of a physical injury[44] and is premised on constitutional violations, not mental and emotional injuries. Accordingly, the claim is not barred by § 1997e(e) and Defendants' motion for summary judgment on Claim 7 will be denied.

---

[40] Docket 351-1 at 28.

[41] Docket 31 at 12 (Third Amended Complaint).

[42] *See* 42 U.S.C. § 1997e(e): "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18)."

[43] *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002).

[44] Docket 851-3 (Grievances).

### F. Claim 8, Trooper call

Mr. Tholson alleges in Claim 8 that on or about July 3, 2013, Sergeant Elmore violated his rights to equal protection and due process by denying his request to call to the Alaska State Troopers regarding his claim against Lieutenant Thomas. In his opposition, Mr. Tholson clarifies that his rights were violated because he is "entitled to contact the state troopers and report a crime when I am the victim."[45] Mr. Tholson alleges that when he asked to make the call, "I was denied and told if I keep this up I would not live to see my next birthday," and that Sergeant Elmore said, "I know what happened Tholson and you better learn your lesson."[46] Defendants assert that Sergeant Elmore declined to facilitate the phone call only after he conducted a reasonable investigation.[47]

Claim 8 implicates several rules. First, verbal abuse does not violate a prisoner's constitutional rights.[48] Second, Defendants' assert that there is no claim of physical or emotional injury resulting from Sergeant Elmore's investigation to satisfy the requirements of § 1997e(e). However, the Court finds § 1997e(e) inapplicable insofar as Mr. Tholson's Claim 8 seeks to redress constitutional violations rather than mental or emotional injuries. Third, to establish a violation of substantive due process, a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable,

---

[45] Docket 381 at 10.

[46] Docket 31 at 13.

[47] Docket 38 at 42.

[48] *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997), *overruled in part on other grounds by Shakur*, 514 F.3d at 884–85.

having no substantial relation to the public health, safety, morals, or general welfare.[49]

The Ninth Circuit has applied this rule in holding that the restriction on phone access to an Alaska pretrial detainee did not constitute a violation of substantive due process:

> Pretrial detainees have a substantive due process right against restrictions that amount to punishment. This right is violated if restrictions are imposed for the purpose of punishment. There is no constitutional infringement, however, if restrictions are but an incident of some other legitimate government purpose. In such a circumstance, governmental restrictions are permissible.[50]

When punitive intent is not express, the determination will generally turn upon whether an alternative purpose may rationally be connected to the restriction and whether the restriction appears excessive in relation to the alternative purpose assigned to it.[51]

Here, the alternative purpose Defendants assert for denying the phone call is consistency in prison grievance procedures.[52] The Court agrees with Defendants' analysis that Sergeant Elmore denied the phone call not as punishment, but based on an investigation that found no reason to call the Troopers.[53] The restriction was not excessive, particularly in light of the fact that Mr. Tholson was later able to speak with the Troopers about the incident.[54] Mr. Tholson has not set forth facts showing that Sergeant

---

[49] See *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996), *overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007).

[50] *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (citations omitted).

[51] *Id.* at 1045–46.

[52] Docket 336 at 39.

[53] *See* Docket 336 (Motion) at 37–40.

[54] Docket 336 at 38.

Elmore acted to punish him, or that this restriction was not legitimate or was excessively restrictive. Accordingly, the Court will grant summary judgment to Defendants on the due process claim.[55]

Summary judgment will also be granted to Defendants on the Equal Protection component of Claim 8. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."[56] Mr. Tholson has not established that Sergeant Elmore denied the phone call with a discriminatory intent, nor has he demonstrated that he is a member of a protected class.

Based on the foregoing, Defendants' Motion for Summary Judgment at Docket 336 will be granted with respect to Claims 2, 5, 6, and 8, and will be denied as to Claim 1 against Defendant Hubbard and Claim 7 against Defendant Thomas.

---

[55] The Court's conclusion that Mr. Tholson has not raised a genuine issue of material fact on this claim would not change if it was construed as a retaliation claim. "To establish a claim for retaliation, a prisoner must show that a prison official took some adverse action against an inmate because of that prisoner's protected conduct, that the action chilled the inmate's exercise of his constitutional rights, and the action did not advance a legitimate correctional goal." *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012). Even if Sergeant Elmore made the statements alleged by Mr. Tholson, these would not be sufficient to show that Sergeant Elmore denied the call because of any of Mr. Tholson's protected conduct, chilled Mr. Tholson's exercise of constitutional rights, and failed to advance a legitimate correctional goal (consistent grievance policies).

[56] *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

At Docket 371, Plaintiff filed a Request for In Camera Review, seeking for this Court to listen to a recorded interview of a SART nurse regarding bruising. The request will be denied for the reasons set forth by Defendants in their opposition at Docket 378.

At Docket 380, Plaintiff moves for the court to take judicial notice of DOC Policy and Procedure 808.03, which relates to the content of written grievances. Defendants do not object.[57] This motion will be granted.

At Docket 385, Plaintiff seeks to reopen the briefing on summary judgment because Defendants did not assert that the claims for injunctive relief would be mooted out by Mr. Tholson's relocation to another facility until their reply. The summary judgment briefing was thorough; the Court would not find additional briefing helpful. The fact that Mr. Tholson has been relocated to Spring Creek was not the basis for the Court's rulings set forth above that there was no violation regarding the claims related to his requests for injunctive relief (inadequate food service and RLUIPA violations).[58] Accordingly, the request to reopen the briefing will be denied.

At Docket 390, Mr. Tholson filed a motion seeking the return of the SART CD he filed with his motion for in camera review at Docket 372. This motion will be granted, and Court staff will be directed to return the SART CD to Mr. Tholson.

At Docket 392, Defendants move to strike Plaintiff's Notice of Errata that Plaintiff filed at Docket 391. Plaintiff opposed at Docket 393, to which Defendants filed a reply at Docket 394. In the Notice of Errata, Plaintiff asserts that his deposition testimony is at

---

[57] *See* Docket 383.

[58] *See* Docket 31 at 16–17.

odds with the videotape of the June 30, 2012 incident. Because this Court has denied summary judgment on the excessive force claim, the motion to strike the Notice of Errata will be denied as moot.

Based on the foregoing, IT IS ORDERED:

1. Defendants' Motion for Summary Judgment at Docket 336 is GRANTED as to Claims 2, 5, 6, and 8, and DENIED as to Claim 1 and Defendant Hugh Hubbard, and Claim 7 and Defendant Sondra Thomas.

2. Plaintiff's Request for In Camera Review at Docket 371 is DENIED;

3. Plaintiff's Motion for the Court to Take Judicial Notice at Docket 380 is GRANTED;

4. Plaintiff's Request to Re-Brief Motion for Summary Judgment at 385 is DENIED;

5. Plaintiff's Motion for the Court to Return CD at Docket 390 is GRANTED, and Court staff shall return the SART CD to Mr. Tholson; and

6. Defendants' Motion to Strike Plaintiff's Notice of Errata at Docket 392 is DENIED as moot.

IT IS FURTHER ORDERED that a trial-setting conference is scheduled for **March 8, 2016 at 11:00 a.m.** before Judge Gleason in Anchorage Courtroom 3. Telephonic participants are directed to call (907) 677-6248 five minutes before the hearing start time, then, upon prompting, enter the access code**: 668160** (in the unlikely event that this phone number does not work, please call (907) 677-6227).

DATED this 27th day of January, 2016 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE
